### FISCHBECK SOAP CO. v. UNITED STATES.

No. 44663.

Court of Claims.

Jan. 5, 1942.

Ralph P. Wanlass, of Washington, D. C. (Walter G. Moyle, of Washington, D. C., on the brief), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, C. J., and WHITAKER, MADDEN, and LITTLETON, JJ.

WHITAKER, Judge.

The question presented is whether or not the plaintiff's soap, called "Queen Lily," is a toilet soap and is used or applied or intended to be used or applied for toilet purposes and, therefore, taxable under section 603 of the Revenue Act of 1932, 47 Stat. 169, 261, 26 U.S.C.A. Int.Rev.Acts, page 608, which reads as follows:

"Sec. [§] 603. *Tax on Toilet Preparations, etc.*

"There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Perfumes, essences, extracts, toilet waters, cosmetics, petroleum jellies, hair oils, pomades, hair dressings, hair restoratives, hair dyes, tooth and mouth washes (except that the rate shall be 5 per centum), dentifrices (except that the rate shall be 5 per centum), tooth pastes (except that the rate shall be 5 per centum), aromatic cachous, toilet soaps (except that the rate shall be 5 per centum), toilet powders, and any similar substance, article, or preparation, by whatsoever name known or distinguished; any of the above which are used or applied or intended to be used or applied for toilet purposes."

We are satisfied from the proof that it might be used for toilet purposes, but we are also satisfied that its predominant use is as a laundry soap. Its use for toilet purposes is rare. The manufacturers of it intended it for use as a laundry soap only. The testimony shows that it was never

advertised as anything but a laundry soap, and the plaintiff's salesmen never sold it for anything other than laundry soap. Neither in the advertising in the newspapers, nor by window displays, nor in the sales talks of the salesmen was it ever held out as useful for toilet purposes, but only for laundry and household purposes. It was sold to wholesale grocers, who bought it as a laundry soap, and they sold it to their retail customers as a laundry soap. It was carried on their shelves with other laundry soaps and never with toilet soaps. Consumers purchased it for laundry or household uses.

The above is testified to by plaintiff's employees, the manager, the sales manager, and salesmen, and also by wholesale grocers who purchased it, and by plaintiff's advertising man, and by a representative of a newspaper which carried the advertising. The sole evidence to the contrary is the recitation on the wrapper in which the soap was wrapped, which reads as follows:

"For the Toilet and Bath it has no equal —unlike most other soaps, which leave the skin parched and dry, and liable to crack; it imparts flexibility and moisture to the skin."

An examination of this wrapper, however, discloses that this was thrown in incidentally as still another use which might be made of the soap. The chief claim made in the wrapper was that it was good for washing clothes. The directions for its use were confined exclusively to its use in washing clothes.

The wrapper itself is not such a wrapper as would be used on a toilet soap. It was made of paper of the grade used by newspapers and presented the appearance of wrappers on other laundry soaps. It is a cheap wrapper; it looks nothing like the wrappers around toilet soaps. The proof shows that this company started manufacturing this soap in the 1860's, and that they have used practically the same wrapper ever since. Whether or not it was held out as a toilet soap many years ago, we are satisfied that it was not so held out during the period in question. The recitation in the wrapper that it was a good toilet soap was merely a survival of a claim made many years back.

It is well settled by both article 22 of Regulations 46 and court decisions that soaps advertised and sold primarily for general cleaning or laundry purposes, and which have only an incidental use as a toilet soap, are not taxable under the Act. Sharp & Dohme, Inc., v. Ladner, 3 Cir., 82 F.2d 733; Motter v. Mentholatum Co., 10 Cir., 71 F.2d 1013; United States v. Takara Laboratories, 9 Cir., 100 F.2d 1022.

We are satisfied that this soap was not held out for use as a toilet soap during the period in question, notwithstanding the above-quoted recitation on the wrapper in which the soap was wrapped.

In March 1933 the plaintiff's supply of wrappers containing this recitation had been exhausted and new wrappers were printed which omitted this recitation. Since that time the Commissioner of Internal Revenue has asserted against it no tax under this section.

We hold that the sale of this soap is not taxable under the quoted provision of the Revenue Act, and that plaintiff, therefore, is entitled to the refund sought.

This is not inconsistent with our holding in Flash Chemical Co. v. United States, 23 F.Supp. 440, 87 Ct.Cl. 350. Finding 7 in that case shows that this soap was advertised equally as a soap for the hands as for household use. The opinion states that 75 percent of its use was for cleaning hands, and only 25 percent for general household use. The opinion expressly stated that its use for toilet purposes was not merely incidental. In the present case the testimony shows that this soap was not held out as a toilet soap during the period in question and that its use for this purpose was only occasional and incidental.

Judgment will be entered against the defendant in favor of plaintiff in the sum of $1,667.14, with interest as provided by law. It is so ordered.